**In re Thomas J. BERANEK, a/k/a Tom Beranek, a/k/a Thomas Beranek, Debtor.**

**Bankruptcy No. 80 B 04671 C.**

United States Bankruptcy Court,
D. Colorado.

March 20, 1981.

Brian A. Magoon, Denver, Colo., for Chrysler.

W. Robert Montgomery, Denver, Colo., for debtor.

## FINDINGS, CONCLUSIONS AND ORDER ON NEW CONFIRMATION HEARING TO DETERMINE VALUE OF SECURED CLAIM

PATRICIA ANN CLARK, Bankruptcy Judge.

The matter before the Court is the new confirmation hearing of Thomas J. Beranek, the Debtor. This hearing is for the purpose of admitting additional evidence, previously excluded, on the issue of the value of a secured claim. The creditor, Chrysler Credit Corporation (Chrysler), contends that the value of a vehicle securing a debt owed to it by the Debtor is the amount it could get under a repurchase agreement. The Debtor contends that the repurchase agreement is not conclusive evidence of the value of the collateral. A hearing on the matter was held on March 16, 1981, at which Brian A. Magoon represented Chrysler and W. Robert Montgomery represented the Debtor.

The facts are as follows. On October 3, 1979, the Debtor purchased a 1979 Dodge van from Cherry Creek Dodge, Inc., and signed a retail installment contract. As part of the retail installment contract, the Debtor acknowledged that the contract would be assigned to Chrysler. It later was. In this assignment Cherry Creek Dodge, the dealer, agrees that if Chrysler repossesses the vehicle within a certain time after the Debtor defaults on an installment, the dealer will pay to Chrysler the unpaid balance of the contract regardless of the condition of the motor vehicle. This is commonly called a "repurchase" agreement. The unpaid balance which Chrysler asserts it can receive from the dealer is $5,957.74. The Court found from the evidence at the prior confirmation hearing that the vehicle had a value of $4,250.00. The issue now

before the Court is whether the inclusion into evidence of the repurchase agreement between Chrysler and Cherry Creek Dodge alters the Court's prior determination of value.

Under the new Bankruptcy Code, a Chapter 13 debtor can force a creditor to retain its lien if the debtor gives the creditor the "value" of its collateral (11 U.S.C. § 1325(a)(5)). "Value" is to be determined in accordance with the provisions of Section 506(a) of the Code (11 U.S.C. § 506(a)). In relevant part, Section 506(a) reads:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim *to the extent of the value of such creditor's interest in the estate's interest in such property* .... Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest. (emphasis supplied)

The legislative history to Section 506(a) establishes no clear method for determining value. The House Judiciary Committee's comment to Section 506(a) reads in part:

> "Value" does not necessarily contemplate forced sale or liquidation value of the collateral; nor does it always imply a full going concern value. Courts will have to determine value on a case-by-case basis, taking into account the facts of each case and the competing interests in the case. Report of the Committee on the Judiciary, House of Representatives, to Accompany H.R. 8200, H.R.Rep. No. 95–595, 95th Cong., 1st Sess., p. 356 (1977), U.S. Code Cong. & Admin.News 1978, 5963, 6312.

The Senate Judiciary Committee's comment reads in part:

> While courts will have to determine value on a case-by-case basis, the subsection makes it clear that valuation is to be determined in light of the purpose of the valuation and the proposed disposition or use of the subject property.

The legislative history clearly indicates that the concept of value is to be flexible. Courts are to make case-by-case decisions in light of the purpose of the valuation and the proposed disposition or use of the collateral.

In the instant case, the collateral in which the estate has an interest and in which the creditor has a lien is a 1979 Dodge van. The purpose for valuing this vehicle is that the Debtor wishes to exercise his right under Section 1325(a)(5) to keep the vehicle and force the creditor to accept its value. The Debtor proposes to use the vehicle for work and other activities.

The issue of value was raised at the first confirmation hearing. There, testimony was presented that the vehicle in an open market was worth between $3,500.00 and $4,350.00, depending on the method of valuation the parties used. Chrysler claims, however, that since it could get $5,957.74 for the vehicle under its repurchase contract with the dealer, this determines the value of the vehicle. Chrysler assumes that the value of its *contract* with the dealer is the value of the *vehicle*. This simply is not so. The contract rights which Chrysler has with the dealer are a separate matter and do not involve either the estate or the Debtor.

A literal reading of Section 506 supports the conclusion that the value of the collateral is to be determined by reference to the worth of the collateral in an open market. Section 506 speaks of the creditor's interest *in the estate's interest* in the property on which the creditor has a lien. The property here is the vehicle, and not the contract. The extent of the value of the estate's interest is the value of the vehicle. The estate could not force a sale on the dealer, so the forced sale price could not be the value of the vehicle to the estate. The creditor's interest is dependent on the estate's interest, according to Section 506. Thus, the creditor cannot turn to a private market to which the estate has no access in order to determine value. As one Bankruptcy Judge so aptly put it:

The term "value" as used in § 506(a) to determine the "creditor's interest in the estate's interest" contemplates current fair market value of the particular collateral. Such value is determined in the marketplace normally applicable to that particular type of property in which the estate has an interest and on which the creditor has a lien. The Section 506(a) value of such property cannot be determined by some pre-arranged standard or basis in an agreement between the claimant and its guarantor or insuror which has nothing to do with what the value in a free market where values of such types of property are customarily determined. *Chrysler Credit Corporation v. Cooper*, 7 B.R. 537, 7 B.C.D. 24, 25–26 (N.D.Ga. 1980).

Chrysler also makes the argument that if the Debtor were liquidated in a Chapter 7 proceeding, Chrysler would receive more than it would in this Chapter 13 proceeding if this Court does not accept its version of value. This is because part of Chrysler's claim would be considered unsecured. Of course, Section 1325(a)(4) of the Code states that a plan can be confirmed only if the value given to an unsecured creditor is not less than the amount that would be paid on such claim if the estate of the Debtor were liquidated under Chapter 7.

Chrysler would not get anything more if the estate of the Debtor were liquidated under Chapter 7. In a Chapter 7 proceeding, the Debtor could surrender the collateral to the creditor. If that happened here, Chrysler would get a *vehicle* from the estate—nothing more. Once this transaction was completed, Chrysler could proceed in a subsequent transaction to pursue its contract rights with the dealer. However, this is of no import to the estate and is not a bankruptcy matter. The Debtor, instead of surrendering the collateral, could choose to redeem it under Section 722 of the Code (11 U.S.C. § 722). The Debtor can do this "by paying the holder of [the] lien the amount of the *allowed secured claim* of such holder that is secured by such lien." (emphasis supplied) The "allowed secured claim" is determined in accordance with Section

506(a). Consequently, we are back to a determination of value. For the reasons stated above, the amount Chrysler would receive would be determined by reference to an open market. Therefore, Chrysler would receive no less in a Chapter 13 proceeding than it would if the estate of the Debtor were liquidated in a Chapter 7 proceeding.

Because of the foregoing, the Court rejects "repurchase value" as conclusive evidence of value. In so doing, the Court recognizes that it is at variance with the opinion rendered by Judge Keller of this Court in *In re Stumbo*, 7 B.R. 939 (Bkrtcy. Colo.1981) and respectfully disagrees with it.

ORDERED that the value of the 1979 Dodge van as determined at the prior confirmation hearing remains intact. This value is $4,250.00.