In re Penny Ann DAVIS, a/k/a Penny Ann Payne, Debtor/Appellee.

TERRE HAUTE FIRST NATIONAL BANK, Terre Haute, Indiana, a National Banking Association, Plaintiff/Appellant,

v.

Penny Ann DAVIS, a/k/a Penny Ann Payne, Defendant/Appellee.

No. 71–2308.

United States District Court,
C. D. Illinois,
Danville Division.

April 21, 1982.

the District of Nebraska, with regard to preparation of a certificate of necessity for submis-

Timothy O. Smith, Lowenstein, Hubbard & Smith, Danville, Ill., for plaintiff/appellant.

Richard J. Doyle, Doyle & Howell, Danville, Ill., for defendant/appellee.

## ORDER

BAKER, District Judge.

This case is on appeal from an order of the bankruptcy court issued October 23, 1981, 15 B.R. 118. The appellant, Terre Haute First National Bank of Terre Haute, Indiana, a creditor of the appellee debtor, Penny Ann Davis, appeals from the order which allowed the debtor to redeem a mobile home by installment payments pursuant to § 722 of the Bankruptcy Reform Act of 1978, 11 U.S.C. § 722.

The appeal raises two questions pertaining to the application of § 722: first, whether the value established in a repurchase agreement is dispositive of the property's redemption value; and second, whether § 722 permits a debtor to redeem property by installment payments. For the reasons given below, the court affirms in part and reverses in part the order of the bankruptcy court.

The creditor appellant is the assignee and holder of a retail installment contract under which the debtor appellee purchased a 1979 Horizon Village Park Mobile Home from Thomas Manufactured Housing, Inc.

sion to the Honorable Donald P. Lay, Chief Judge for the Eighth Circuit Court of Appeals.

[Thomas]. The assignment from Thomas to the appellant included a limited repurchase agreement and a partial guarantee. The limited repurchase agreement provided that if the assignee repossessed or recovered the mobile home upon the default of the debtor, the assignor would pay the unpaid balance to the assignee. At the time the debtor's petition in bankruptcy was filed, the balance due on the installment contract was in excess of the mobile home's fair market value. The unpaid balance on the contract was $15,076.43. The approximate fair market value of the property was $8,106.00. The provisions of § 722 applied because the trustee abandoned the property under § 544, and the debt was a dischargeable consumer debt secured by tangible personal property intended for personal, family or household use.

## I.

■ The appellant first contends that the bankruptcy court erred in rejecting the value established in the repurchase agreement as dispositive of the mobile home's redemption value. Section 722 allows a debtor to redeem property abandoned by the trustee, pursuant to § 544, by paying the lienholder the amount of the allowed claim secured by the lien. Under § 506(a), the amount of the allowed secured claim is the value of the creditor's collateral. Section 506(a) further states that the value of the creditor's collateral shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property. . . ."

The bankruptcy court adopted a flexible and pragmatic standard in valuing the collateral. Under such an approach a bankruptcy court is not bound by a unilateral and oftentimes artificial value as established in a repurchase agreement. This is in accord with the legislative history of § 722 where redemption is described as a "right of first refusal on a foreclosure sale of the property involved." H.R.Rep.No.95–595, 95th Cong., 1st Sess. 127 (1977), reprinted in [1978] U.S.Code Cong. & Ad. News 5787, 6088. The record reveals no

evidence indicating that the amount owing under the repurchase agreement reflects the fair market value of the mobile home or value which would be realized at its forced sale. Therefore the bankruptcy court properly concluded that the fair market value as opposed to the value established in the repurchase agreement determined the redemption value of the collateral. *In re Beranek,* 9 B.R. 864, 7 B.C.D. 522 (Bkrtcy.D. Colo.1981); *Chrysler Credit Corp. v. Cooper,* 7 B.R. 537, 7 B.C.D. 24 (Bkrtcy.N.D.Ga. 1980).

## II.

■ The second issue raised by the appellant is that the bankruptcy court erred when it allowed the debtor to redeem the mobile home by installment payments. Section 722 provides the debtor with the option of retaining certain tangible personal property by paying the creditor the "amount of the allowed secured claim of such holder that is secured by such lien." 11 U.S.C. § 722. Although § 722 makes clear that the amount of the redemption payment is the "allowed secured claim" or current market value of the collateral, the section is silent as to the manner of payment.

The bankruptcy court adopted the view that redemption by installment is not *per se* proscribed under § 722, but that the manner of redemption should be determined on a case by case basis. Under this analysis, if a court finds that the need for redemption by installment, *vis-a-vis* the debtor's rehabilitation, is greater than the harm to the creditor, the court should order redemption by installment subject to any conditions or restrictions the court considers necessary and just to protect the creditor's security. In light of the legislative history of § 722 and the right of reaffirmation afforded under 11 U.S.C. § 524(c), the court concludes that nonconsensual redemption by installment is not an available remedy to a Chapter 7 debtor.

The Bankruptcy Reform Act of 1978 has two separate and distinct provisions which help promote a debtor's rehabilitation.

Congress was concerned with the leverage creditors had over unsuspecting consumer debtors, which often hindered the "fresh start" policy of the bankruptcy laws. To help alleviate the unfair advantages of creditors, Congress enacted §§ 524(c) and 722 of the Bankruptcy Reform Act, 11 U.S.C. §§ 524(c), 722. Section 722 allows for the redemption of tangible personal property used for personal, family or household use which has been exempted under 11 U.S.C. § 522 or abandoned under 11 U.S.C. § 554. Section 524(c) permits a debtor and creditor to enter into a consensual "reaffirmation" agreement regarding a dischargeable debt, subject to court approval. Both methods are available to prevent the repossession of property and help promote the "fresh start" of the debtor.

The newly-created right of redemption under § 722 is drawn from the redemption provision of Uniform Commercial Code § 9–506. Section 9–506 affords a property owner the right to redeem property from a creditor by a lump-sum payment of the full outstanding debt for which the property is held as collateral. Although the legislative history of § 722 indicates that a relaxed redemption provision is needed to promote debtor rehabilitation, Congress also evinced a concern in protecting the interests of the creditor. The following portion of the Senate Report which discusses proposed § 722 illustrates this dual objective:

This section is new and is broader than rights of redemption under the Uniform Commercial Code. It authorizes an individual debtor to redeem tangible personal property intended primarily for personal, family, or household use, from a lien securing a nonpurchase money dischargeable consumer debt. It applies only if the debtor's interest in the · property is exempt or has been abandoned.

This right to redeem is a very substantial change from current law. To prevent abuses such as may occur when the debtor deliberately allows the property to depreciate in value, the debtor will be required to pay the fair market value of the goods or the amount of the claim if the claim is less. The right is personal to the debtor and is not assignable.

S.Rep.No.95–989, 95th Cong., 2d Sess. 95, *reprinted in* [1978] U.S.Code Cong. & Ad. News 5881. The House Report reflects similar concerns. *See* H.R.Rep.No.95–595, 95th Cong., 1st Sess. at 117, 127–28 (1977), *reprinted in* [1978] U.S.Code Cong. & Ad. News at 6077, 6087–88.

Essentially § 722 places the creditor and debtor in equilibrium; the consumer debtor is given an unwaivable right to retain necessary property by paying the lower of the outstanding debt or the current market value of the property, thereby avoiding high replacement costs, while the creditor receives a security similar to that had he foreclosed on the property. The legislative history supports the conclusion that Congress intended to compensate consumer debtors for the overreaching of creditors. In addition, nothing prevents a consensual agreement between the debtor and creditor for redemption by installment. However, Congress gave no indication that it intended to put a creditor's interest in jeopardy. Therefore, the court concludes that the legislative history does not support the conclusion that a court may order redemption by installment on a non-consenting creditor. *See General Motors Acceptance Corp. v. Bell*, 15 B.R. 859 (D.C.E.D.Mich.1981); *First Bank & Trust Co. of Ithaca v. Hart*, 8 B.R. 1020, 7 B.C.D. 301 (D.C.N.D.N.Y.1981); *In re Cruseturner*, 8 B.R. 581, 7 B.C.D. 235 (Bkrtcy.D.Utah 1981).

Construing § 722 to permit nonconsensual redemption by installment conflicts with § 524(c). Section 524(c) allows a creditor and debtor to voluntarily enter into a "reaffirmation" agreement. Oftentimes the renegotiated debt takes the form of an installment contract. To protect the debtor from an overreaching creditor, Congress mandated that the agreement be subject to judicial approval.

Finally, a statute should be construed to reflect a consistent and harmonious whole. Sections 524(c) and 722 pose alternative methods by which a debtor can retain possession of necessary property. If

§ 722 is interpreted to allow nonconsensual redemption by installment, the effect will be to render § 524(c) agreements a virtual nullity. The court recognizes that the bankruptcy court retains the power to fashion equitable remedies. Moreover in some cases, §§ 524(c) and 722 will provide no assistance to the debtor. However, Congress intended §§ 524(c) and 722 to realign the debtor into equilibrium with the creditor. Absent congressional action or a consensual agreement altering that equilibrium, the bankruptcy court's equitable powers are stayed.

Accordingly, the order of the bankruptcy court is affirmed in part, reversed in part and remanded with judgment to be entered in accordance with this decision.