George T. and Gail T.
GRUBBS, Appellants,

v.

NATIONAL BANK OF SOUTH
CAROLINA, Appellee.

Johnny L. MURPHY, Appellant,

v.

CHEMICAL FINANCIAL CORPORA-
TION and Keenan Stephenson,
Chapter 13 Trustee, Appellees.

Civ. A. Nos. 89–2600, 89–2625.

United States District Court,
D. South Carolina,
Columbia Division.

April 25, 1990.

Michael Cox, Columbia, S.C., for George
T. and Gail T. Grubbs.

Earl Michael Carlton, Lexington, S.C.,
for Johnny L. Murphy.

Royann Murray, Columbia, S.C., for
NBSC.

Thomas Lydon, III, Columbia, S.C., for
Chemical Financial Corp.

## ORDER

HENDERSON, District Judge.

■ This matter is before the Court on appeal from two orders of the bankruptcy court, *In re Grubbs*, Bankruptcy No. 88–3857 (Bankr.D.S.C. May 23, 1989), and *In re Murphy*, Bankruptcy No. 89–703 (Bankr.D.S.C. Aug. 29, 1989). The material facts are not in dispute. The appellants in these two proceedings, George T. and Gail T. Grubbs ("the Grubbses") and Johnny L. Murphy ("Murphy"), filed for relief under Chapter 13 of the United States Bankruptcy Code ("Bankruptcy Code"), 11 U.S.C. §§ 1300 *et seq.* Appellee National Bank of South Carolina ("NBSC") holds a promissory note obligating the Grubbses on a 1987 Colt automobile, under assignment from Ernest Baker Chrysler Plymouth–Dodge which sold the automobile to the Grubbses. Appellee Chemical Financial Corporation holds a promissory note obligating Murphy on a 1985 Vintage Phoenix Mobile Home, under assignment from Mid–Carolina Homes, Inc. which sold the mobile home to Murphy. Each creditor appellee also holds a recourse agreement with its respective dealer-assignor under which the dealer agreed that, upon repossession of the collateral by the creditor, the dealer would

pay that creditor the full amount of indebtedness outstanding at the time of repossession. Under the Bankruptcy Code, each creditor appellee has "a secured claim to the extent of the value of such creditor's interest in the estate's interest" in the collateral and "an unsecured claim to the extent that the value of such creditor's interest is less than the amount of the claim." 11 U.S.C. § 506(a). The bankruptcy court valued each appellee's secured claim at the retail value of the respective collateral. The appellants assert the retail valuations were legally erroneous and that wholesale value should have been assigned instead.[1] On appeal from the bankruptcy court, this Court may set aside findings of fact only if they are clearly erroneous but must make independent determinations concerning the bankruptcy court's legal conclusions. *In re McIver*, 78 B.R. 439, 441 (D.S.C.1987). The Court concludes it was an error of law to assign retail value to the appellees' secured claims and, accordingly, reverses the decision of the bankruptcy court.

■ Under 11 U.S.C. § 506(a), the value of a creditor's secured interest "shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest." The legislative history of § 506(a) reveals that value was intended to be a flexible concept determined on a case-by-case basis, taking into account the competing interests in each case. *See* H.R.Rep. No. 595, 95th Cong., 1st Sess. 356, *reprinted in* 1978 U.S.Code Cong. & Admin. News 5787, 5963, 6312; S.Rep. No. 989, 95th Cong.2d Sess. 68, *reprinted in* 1978 U.S. Code Cong. & Admin.News, 5787, 5854; *see also In re Beranek*, 9 B.R. 864, 865 (Bankr. D.Colo.1981); *In re Cohen*, 13 B.R. 350, 353 (Bankr.E.D.N.Y.1981); *In re Klein*, 10 B.R. 657, 659 (Bankr.E.D.N.Y.1981); *In re Jones*, 5 B.R. 736, 736 (Bankr.E.D.Va.1980); *In re Miller*, 4 B.R. 392, 393 (Bankr.S.D. Cal.1980). In a chapter 13 bankruptcy proceeding, valuation of a creditor's secured claim is important because under 11 U.S.C. § 1325(a)(5) the confirmation plan must provide for distribution of property having a present value not less than the amount of the secured claim. *See Collier on Bankruptcy* ¶ 506.04[1], at 506–24 (15th ed. 1988). Thus, the value of the collateral governs the secured creditor's rights under a confirmation plan. Bowman & Thompson, *Secured Claims Under Section 1325(a)(5)(B): Collateral Valuation, Present Value, and Adequate Protection*, 15 Ind.L.Rev. 569, 570–71 (1982).

■ In this District, the general rule adopted by the bankruptcy court is that property "should be valued at an amount which could be derived from its disposition in a commercially reasonable manner." *See In re Boyer*, Bankruptcy No. 82–783 to –785 (June 10, 1985). Following this rule in proceedings not involving recourse agreements, the bankruptcy court in this District has held that the secured claim of a creditor not in the business of selling the particular collateral at issue should be valued at wholesale rather than retail value. *See In re Boyd*, Bankruptcy No. 88–303 (May 24, 1988); *Johnson v. General Motors Acceptance Corp.*, Bankruptcy No. 87–3709 (March 30, 1988); *In re Willis*, Bankruptcy No. 88–3668 (Feb. 2, 1989). This approach is based on the presumption that a creditor will dispose of collateral by sale to a dealer unless the creditor presents evidence that it has the capacity to retail the collateral itself, *see In re Willis*, slip op. at 2, and reflects the view taken by the majority of bankruptcy courts. *See In re Cook*, 38 B.R. 870, 873 n. 7 (Bankr.D.Utah 1984); *In re Klein*, 10 B.R. at 657. Under this approach, the secured claims of the creditors here would normally be assigned wholesale value because they are not in the business of selling at retail and there is no evidence that they have the capacity to do so. Nevertheless, the bankruptcy court assigned retail value to those claims because of the recourse agreements between the

---

1. The stipulated values of the collateral are as follows:

| | | |
|---|---|---|
| Colt Automobile: | $5,125 (wholesale) | $6,025 (retail) |
| Mobile Home: | $7,447.26 (wholesale) | $13,226 (retail) |

creditor and the dealers. The judge reasoned:

> While recourse agreements between a creditor and a third party are ineffective in fixing the amount of the secured claim, they are, nevertheless, germane and useful to determine the proposed disposition of the collateral. Here, the creditor states that the usual means of liquidating this collateral is to repossess it and have the car dealer sell it pursuant to the recourse agreement which the dealer is obligated to do. In doing so, the creditor "steps into the shoes" of the dealer and since the dealer is in the business of selling this type of collateral, it is clear that the proposed commercially reasonably disposition of same is to retail it.

*In re Grubbs,* slip op. at 4; *see also In re Murphy,* slip op. at 3–4. This Court concludes the bankruptcy court's retail valuation was legally erroneous for the following reasons.

Fixing the claim at retail value, and thereby enforcing, in part, the creditor's contractual right against the dealer, is inconsistent with the intended purpose of Chapter 13 valuation, namely to protect the creditor's rights *against the debtor:*

> Section 1325(a)(5)(B) is meant to insure that a secured creditor will receive the equivalent of recourse to the collateral which was the inducement for extending the loan to the debtor. In other words, section 1325(a)(5)(B) protects the creditor's expectations of recovery *against the debtor* in the event of default. As long as only the debtor and creditor are involved, these expectations are protected by guaranteeing the creditor the amount he would receive upon repossession and sale of the collateral.

> The existence of a repurchase agreement, however, alters the creditor's expectations. Though the creditor still only expects to recover the value of the collateral from the debtor, he anticipates additional recovery from the dealer in the amount by which the repurchase price exceeds the market value of the collateral in the creditor's hands. Thus, permitting the creditor to recover only the fair market value of the collateral in his hands *does* protect his expectations of recovery *as against the debtor.*

Bowman & Thompson, *supra,* at 577 (emphasis in original), *quoted with approval in In re Cook,* 38 B.R. at 876; *see also Collier on Bankruptcy, supra,* ¶ 506.04[2], at 506–35 to –36 ("The availability to such holder of recourse against third parties with respect to the claim should not affect the value attributed to the property.... The bankruptcy court must protect the holder of a secured claim only to the extent of the value of his interest in the estate's interest in the subject property. The court is not required to afford protection with respect to the creditor's contractual rights against third parties."). Consistent with the purpose of Chapter 13 valuation, the court below should have entirely disregarded the recourse agreements between the creditors and the third party dealers, as the overwhelming majority of other courts have done.[2] Ignoring those agreements, and applying the usual valuation rule, the secured claims should be fixed at wholesale value because the creditors are not in the business of selling at retail and have not shown the capacity to do so. In this regard, the Court notes that the creditors cannot reasonably be said to "stand in the shoes" of the dealer-assignors, so as to

---

**2.** With one exception, those courts that have valued claims subject to recourse agreements have consistently concluded those agreements should be ignored for the purpose of valuation. *See, e.g., In re Reeder,* 60 B.R. 312, 314–15 (Bankr.D.Colo.1986); *In re Cook,* 38 B.R. at 875–76 (Bankr.D.Utah 1984); *In re Davis,* 20 B.R. 212, 213 (C.D.Ill.1982); *In re Beranek,* 9 B.R. 864 (Bankr.D.Colo.1981); *In re Clements,* 11 B.R. 38, 39 (Bankr.N.D.Ga.1981); *In re Van Nort,* 9 B.R. 218, 221 (Bankr.E.D.Mich.1981); *In re Cooper,* 7 B.R. 537, 539–40 (Bankr.N.D.Ga.1980); *see also Collier on Bankruptcy, supra,* ¶ 506.04[2], at 506–35 ("Most courts have disregarded the repurchase agreement price in fixing the amount of the secured claim."); Bowman & Thompson, *supra,* at 575–77. The single exception is *In re Stumbo,* 7 B.R. 939 (Bankr.D.Colo.1981), which valued the claim at the amount recoverable under the recourse agreement.

justify retail valuation, because the creditors do not incur any of the resale expenses regularly borne by dealers, such as the costs of doing retail business and of preparing the particular collateral for resale, which costs reduce the net value of repossessed collateral to a retail dealer substantially below retail price.

For the preceding reasons, the Court concludes the bankruptcy court erroneously fixed the creditors' claims in these proceedings at retail rather than wholesale value. Accordingly, the Court reverses the bankruptcy court's decision in this respect.

IT IS SO ORDERED.